



FILED
Mar 18, 2020
01:04 PM(CT)
TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD

# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| Kenneth Friend | ) | Docket No.     2019-03-1017 |
| | ) | |
| v. | ) | State File No.  46052-2019 |
| | ) | |
| Staples Contract and | ) | |
| Commercial, LLC, et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | |
| Compensation Claims | ) | |
| Brian K. Addington, Judge | ) | |

---

## Affirmed and Remanded

---

The employee, a sales manager at an office supply store, alleged he suffered a right knee injury as a result of performing work activities over a two-day period. After timely reporting his injury, the employee sought medical care at a hospital emergency department and was referred to an orthopedic surgeon who subsequently diagnosed a tear in the employee's meniscus and recommended surgery. The employer denied the claim, contending the employee did not suffer a compensable accidental injury based upon the medical proof establishing that the employee suffered an acute injury rather than a gradual injury. Following an expedited hearing in which the employee sought medical and temporary disability benefits, the trial court ordered the employer to provide medical benefits, including the recommended knee surgery, and denied the employee's request for temporary disability benefits. Both parties have appealed. We affirm the trial court's order and remand the case.

Judge David F. Hensley delivered the opinion of the Appeals Board in which Presiding Judge Timothy W. Conner and Judge Pele I. Godkin joined.

J. Allen Callison, Nashville, Tennessee, for the employer-appellant/appellee, Staples Contract and Commercial, LLC

Timothy A. Roberto, Knoxville, Tennessee, for the employee-appellee/appellant, Kenneth Friend

1

## Factual and Procedural Background

Kenneth Friend ("Employee") was fifty years old when he alleged injuring his right knee in the course and scope of his work as a sales manager with Staples Contract and Commercial, LLC ("Employer"), in Knoxville, Tennessee. He described changing out and "reworking" displays and price tags and moving products around in Employer's "back to school" season on June 19 and 20, 2019, which he said required him to kneel, stoop, twist, bend, and crawl throughout his nine-hour shifts. He described having to "sit on [his] knees" to stock and properly label and price the lowest shelves and having to bend and twist to get up from the floor. Employee testified he told his supervisor his knee was hurting "from crawling around" and, in "a joking manner," that he "must be getting old." In an affidavit Employee filed in support of his request for an expedited hearing, he stated that "[o]n June 19, 2019, [he] mentioned to [his] supervisor . . . that [he] was having some knee pain as a result of [his] work." No one disputed Employee's testimony that he gave notice of his knee pain to his supervisor on June 19.

Employee testified he was not having any problems with his knees before those two days and did not have a history of knee complaints. He was not scheduled to work on June 21 and testified that when he woke up that morning, his right knee was swollen, and he realized he had more than just soreness. He stated that when he and his supervisor opened the store on the morning of June 22, he told his supervisor about his knee swelling and that she instructed him to call Employer's workers' compensation insurance carrier. He further testified that the carrier verbally gave him a list of medical providers and instructed him to go to one of the providers within twenty-four hours.

On June 23, Employee went to Blount Memorial Hospital's emergency department, one of the facilities included on the list of providers given him by the carrier. He testified he selected that facility because it was the weekend and the other offices were closed. The report of his visit described "[right] knee pain after twisting injury at work" and indicated x-rays were taken. The radiology report included an impression of "mild soft tissue fullness . . . [that] suggests a small joint effusion." Employee was referred to an orthopedic surgeon, Dr. Todd Griffith, whom Employee first saw three days later.

Dr. Griffith's June 26, 2019 report stated that Employee "developed right knee pain after doing a lot of squatting and twisting activity with his right knee on 06/19 and 06/20" and that Employee's examination was "consistent with medial meniscal pathology." Dr. Griffith recommended an MRI, instructed Employee to stay on crutches, and suggested that Employee should limit his work to sedentary duty. A July 3 MRI was interpreted as indicating a medial meniscal tear, probable MCL sprain, patellofemoral and proximal tibia-fibula osteoarthritis, and small joint effusion. Upon Employee's return to Dr. Griffith on July 5, the doctor recommended arthroscopic surgery and took Employee off work until after he was reevaluated following surgery.

2

Employer denied the claim, asserting that the undisputed medical proof established Employee suffered an acute injury, but that Employee alleged a gradually occurring injury or repetitive stress injury and was unable to identify the specific incident resulting in his injury. Both parties sent written questionnaires to Dr. Griffith. In response to Employee's questionnaire, Dr. Griffith indicated that Employee "suffered an acute injury in the form of a meniscal tear at work," and that the work Employee performed on June 19 and 20 "was more than 50% the cause of his right meniscal tear considering all causes."

Responding to Employer's questionnaire, Dr. Griffith indicated that Employee's medial meniscal tear and MCL sprain were "primarily ([greater than] 50%) caused or aggravated by [Employee's] employment." Responding to a question asking whether Employee's injuries were "caused by acute/traumatic events or by repetitive injuries," Dr. Griffith indicated the injuries were caused by "[t]raumatic/acute injury." Dr. Griffith also indicated the meniscal tear was not a degenerative condition, and he explained the mechanism of injury as follows:

> Squatting and twisting at work on 6/19 [and] 6/20. Within 24 [hours], had effusion. Hyperflexed knee [with] twist puts stress on posterior horn of medial meniscus and MCL [which were] the injuries noted on MRI [and] exam.

Following an evidentiary hearing, the trial court identified the primary issue as "whether [Employee] suffered an injury as defined in [Tennessee's] Workers' Compensation Law." Noting that Tennessee Code Annotated section 50-6-102(14)(A) "provides that an injury is 'accidental' only if the injury is caused by a 'specific incident or set of incidents,'" the court stated that Employee "told his co-worker and supervisor that he injured his knee at work" and "told his medical providers that his injury happened while squatting and twisting at work." Addressing Employer's argument that Employee "must be more specific as to the time the injury occurred," the court stated that it "[was] not sure how [Employee] could be more specific." The trial court determined that Employee was likely to prove at trial that his right knee condition arose primarily out of his employment and ordered Employer to approve the surgery recommended by Dr. Griffith and provide further medical benefits in accordance with the workers' compensation law.

Addressing Employee's request for temporary disability benefits, the court noted that Employer paid Employee's wages through July 5, the date that Dr. Griffith took Employee off work. The court stated that Employee "applied for and continues to receive short-term disability benefits from [Employer]," adding that Employer "is entitled to set off any temporary disability benefits from any payment under an employer-funded disability plan." Although the precise basis for the trial court's determination to deny temporary disability benefits is unclear, the court stated that Employee "worked for his

3

family's barbeque business for several weeks after the injury, which would also serve to reduce or exclude any temporary disability benefits." "Under these circumstances," as stated by the court, it denied Employee's request for temporary disability benefits "at this time." Both parties have appealed.

## Standard of Review

The standard we apply in reviewing a trial court's decision presumes that the court's factual findings are correct unless the preponderance of the evidence is otherwise. *See* Tenn. Code Ann. § 50-6-239(c)(7) (2019). When the trial judge has had the opportunity to observe a witness's demeanor and to hear in-court testimony, we give considerable deference to factual findings made by the trial court. *Madden v. Holland Grp. of Tenn., Inc.*, 277 S.W.3d 896, 898 (Tenn. 2009). However, "[n]o similar deference need be afforded the trial court's findings based upon documentary evidence." *Goodman v. Schwarz Paper Co.*, No. W2016-02594-SC-R3-WC, 2018 Tenn. LEXIS 8, at *6 (Tenn. Workers' Comp. Panel Jan. 18, 2018). Similarly, the interpretation and application of statutes and regulations are questions of law that are reviewed *de novo* with no presumption of correctness afforded the trial court's conclusions. *See Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013). We are also mindful of our obligation to construe the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer. Tenn. Code Ann. § 50-6-116 (2019).

## Analysis

Employer raises a single issue on appeal, questioning the "degree of specificity" required for Employee to establish that his injury was due to a "specific incident, or set of incidents . . . identifiable by time and place of occurrence," as contemplated by Tennessee Code Annotated section 50-6-102(14)(A). Employee raises two issues. First, Employee asserts the trial court erred by failing to order temporary *total* disability benefits. Second, Employee contends the trial court erred in admitting into evidence surveillance video of Employee. For the reasons that follow, we conclude the preponderance of the evidence supports the trial court's determination that Employee would likely prevail at trial in establishing he suffered an injury by accident arising primarily out of his employment. We also conclude the evidence supports the trial court's determination not to award temporary disability benefits. Our resolution of these two issues makes it unnecessary to address Employee's second issue concerning the admissibility into evidence of the surveillance video.

*Employee's Alleged Injury*

Tennessee Code Annotated section 50-6-102(14) (2019) defines "injury" and "personal injury" to mean an "injury by accident . . . arising primarily out of and in the course and scope of employment, that causes . . . disablement or the need for medical treatment." Subsection 50-6-102(14)(A) provides that "[a]n injury is 'accidental' only if the injury is caused by a specific incident, or set of incidents, arising primarily out of and in the course and scope of employment, and is identifiable by time and place of occurrence." Employer's defense rests on its assertion that Employee suffered an acute injury, as opposed to what Employer characterizes as a "gradual injury," which Employer argues requires there to be a specific incident identifiable by time and place of occurrence. It asserts the medical evidence is unequivocal in establishing that Employee suffered an acute injury, but Employee testified he sustained a gradually occurring injury over two days of work. According to Employer, "[i]t is this discrepancy that serves as the crux of the dispute." By contrast, Employee contends he adequately identified the incident or set of incidents resulting in his injury by pointing to specific activities performed over an identifiable two-day time period.

Further addressing section 50-6-102(14)(A), Employer asserts there are two different types of compensable injuries, those resulting from "a specific incident," and those resulting from a "set of incidents." According to Employer,

 once [it is] established what "type" of injury is alleged, the statute then provides three requirements for establishing a compensable injury: (14)(A) requires that it must be identifiable by time and place of occurrence; (14)(B) requires that the injury primarily arise out of the employment; and (14)(C) requires that the injury be the primary cause of the disablement or need for medical treatment.

In this appeal, Employer asserts the only criterion at issue is whether the acute injury is identifiable "by time and place of occurrence." Based upon Employee's assertion that repetitive bending, squatting, stooping, and crawling over a two-day period resulted in his injury and his inability to identify a specific event that resulted in his injury, Employer contends Employee "failed to establish a *prima facie* case of a compensable injury under the statutory definition." We disagree.

Employee relies on our decision in *Smiley v. Four Seasons Coach Leasing, Inc.*, Nos. 2016-06-0104 & -0105, 2016 TN Wrk. Comp. App. Bd. LEXIS 28 (Tenn. Workers' Comp. App Bd. July 15, 2016), in which we held that the proof presented by an employee bus driver of a "series of incidents" over a nineteen-day period was sufficient to allow the trial court to determine that the employee would likely prevail at trial in establishing a compensable injury. Similar to the present case, in *Smiley*, the employer argued that the

5

employee had not presented sufficient proof of a specific incident to establish that he would likely prevail at trial. We disagreed, stating,

> [the employer's] position is unduly restrictive and fails to take into account the legislature's use of the phrase "set of incidents" in section 50-6-102(14)(A). In amending the definition of "injury," the legislature made clear that a "set of incidents" that is "identifiable by time and place of occurrence" can constitute an "injury by accident" as that phrase is used in Tennessee Code Annotated section 50-6-103 (2015) ("Every employer and employee subject to this chapter, shall, respectively, pay and accept compensation for personal injury . . . by accident arising primarily out of and in the course and scope of employment . . . ."). A "set of incidents," by definition, cannot occur instantaneously, but must occur over some period of time. Thus, to establish a compensable injury by accident, an employee need not prove a single, sudden event accompanied by the immediate onset of pain or other symptoms, but can meet his or her burden at an expedited hearing by presenting evidence from which the trial court can determine he or she is likely to prove a compensable set of incidents over an identifiable period of time.

*Id.* at *21-22.

Employer attempts to distinguish *Smiley* based upon the medical proof, asserting there was no medical evidence of an acute/traumatic injury in *Smiley*, whereas here, the undisputed medical proof established that Employee suffered an acute/traumatic injury. The critical issue is whether Employee's knee injury arose primarily out of a specific incident or set of incidents. We do not perceive the medical proof that Employee suffered an acute traumatic injury as suggesting there could not have been a set of incidents that resulted in Employee's acute injury. Rather, we perceive the medical proof as supporting Employee's testimony that the work activities he described performing over the two-day period he identified constituted a set of incidents that led to his acute injury as contemplated in section 50-6-102(14)(A).

Employer cites two of our prior opinions in support of its position, neither of which we find controlling in this case. First, Employer relies on *Watson v. Catlett Construction*, No. 2017-05-0515, 2018 TN Wrk. Comp. App. Bd. LEXIS 68 (Tenn. Workers' Comp. App. Bd. Dec. 14, 2018), in asserting that an employee must identify a specific incident to establish a compensable injury. However, the employee's claim for benefits in that case was denied not because his allegations were not sufficiently specific but because of inconsistencies in those allegations, a lengthy history of similar complaints, and concerns regarding the employee's credibility.

Employer also contends *Stanley v. WalMart, Inc.*, No. 2015-05-0025, 2015 TN Wrk. Comp. App. Bd. Lexis 17 (Tenn. Workers' Comp. App. Bd. June 26, 2015), is similar to the instant case. However, in *Stanley* the entirety of the evidence presented at an expedited hearing was limited to twenty-four exhibits, and there was no in-person testimony. The evidence of the employee's own statements was limited to those in a patient intake form and in an incident report the employee completed. Comparing those statements with information in the medical records, the trial court noted there were differing statements indicating uncertainty on the employee's part in defining the mechanism of his injury. In addition, the employer presented sworn statements indicating the employee had been unable to identify an incident *or a set of incidents* that resulted in his injury. Against that background, the trial court determined that the employee had failed to carry his burden of proof to establish an injury by accident, and we affirmed the trial court. The facts in both *Watson* and *Stanley* are distinguishable from those currently before us.

In the present case, Employee identified specific physical activities he performed over the course of a narrow and identifiable period of time that resulted in his right knee injury. His co-worker corroborated his testimony as to the work Employee performed, stating that "halfway through the day [Employee] was limping around," and that "[b]efore the end of the shift [Employee] was at the point where I told him that he needed to sit down because the limp had become very apparent." The fact that Employee was unable to point to the specific moment in time that a tear occurred to his medial meniscus does not prevent his claim from being compensable. Employee successfully met his burden at the expedited hearing by identifying the time and place of his injury – a two-day period over which he performed specific physical tasks that his physician opined are consistent with the type of injury he sustained.

*Temporary Disability Benefits*

Turning to Employee's issues on appeal, his first issue was phrased as whether the trial court erred when it failed to order Employer to issue temporary *total* disability benefits. However, the argument in Employee's brief was limited to the assertion that Employer violated Tennessee Code Annotated section 50-6-128 (2019). That statute provides that an employer may not offset any sickness and accident income benefit paid to an employee against the employer's temporary total disability benefit payment liability if the employer "knowingly, willfully, and intentionally causes a . . . loss wage claim to be paid under health or sickness and accident insurance." Tenn. Code Ann. Section 50-6-128.

Employee testified that he received short-term disability payments of varying amounts over a period of time beginning August 31, 2019, and extending to the date of the expedited hearing. The parties stipulated that Employee waived temporary total disability benefits for five specific weeks following his injury because, according to

Employee, he could not "prove or disprove that he didn't have income in those weeks" from his family's food business. In its order denying temporary disability benefits, the trial court stated that Tennessee Code Annotated section 50-6-114(b) "entitled [Employer] to set off any temporary disability benefits from any payment under an employer-funded disability plan," but the court also noted that Employee "worked for his family's barbeque business for several weeks after the injury, which would also serve to reduce or exclude any temporary disability benefits." Based on these circumstances, the trial court denied Employee's request for temporary disability benefits "at this time."

Employee testified that he last worked for Employer on July 5, 2019, and that he subsequently attended three fairs and two festivals where his family had a food trailer. He denied selling or serving food, but stated "that's not to say if somebody went to the bathroom or something [he] didn't [sell or serve food] if there was a customer." He admitted he hauled the trailer in and out of the event locations and that he "did wipe some things down." Considering the stipulation that Employee waived temporary total disability benefits for five weeks after his injury and his testimony concerning what, if any, work he performed in connection with the family's food business, we conclude the trial court did not err in denying temporary disability benefits. Without an award of temporary total disability benefits, there is no issue to be addressed concerning an offset of the short-term disability benefits paid to Employee against Employer's temporary total disability benefit payment liability as contemplated in Tennessee Code Annotated section 50-6-128.[1] Accordingly, we find no merit in Employee's first issue.

Our resolution of the issues addressed above makes it unnecessary to address whether the trial court erred in admitting into evidence the video surveillance of Employee, and we offer no opinion as to its admissibility.

## Conclusion

For the foregoing reasons, we affirm the decision of the trial court. Costs on appeal are taxed to Employer.

---

[1] In reaching our conclusion concerning the trial court's denial of temporary disability benefits, we express no opinion as to the applicability or interpretation of Tennessee Code Annotated section 50-6-128 (2019).



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# WORKERS' COMPENSATION APPEALS BOARD

| Kenneth Friend | ) | Docket No.  2019-03-1017 |
|---|---|---|
| | ) | |
| v. | ) | State File No.  46052-2019 |
| | ) | |
| Staples Contract and Commercial, LLC, et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | |
| Compensation Claims | ) | |
| Brian K. Addington, Judge | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 18th day of March, 2020.

| Name | Certified Mail | First Class Mail | Via Fax | Via Email | Sent to: |
|---|---|---|---|---|---|
| Timothy A. Roberto | | | | X | troberto@brownandroberto.com |
| Jamie Lampien | | | | X | jlampien@brownandroberto.com |
| J. Allen Callison | | | | X | allen.callison@mgclaw.com |
| Brian K. Addington, Judge | | | | X | Via Electronic Mail |
| Kenneth M. Switzer, Chief Judge | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | X | penny.patterson-shrum@tn.gov |

Olivia Yearwood
Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-1606
Electronic Mail: WCAppeals.Clerk@tn.gov